## WEST LAUREL HILL CEMETERY CO. v. McLAUGHLIN, Former Collector of Internal Revenue.

### SAME v. LADNER, Former Collector of Internal Revenue.

### Nos. 19854, 19856.

District Court, E. D. Pennsylvania.

March 27, 1942.

Paul Reilly, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U.S. Atty., and Thomas J. Curtin, Asst. U.S. Atty., both of Philadelphia, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharp and Fred J. Neuland, Sp. Assts. to Atty. Gen., for defendants.

MOORE, District Judge.

Motion for summary judgment is filed by both the plaintiff and the defendants. The primary question is whether or not the plaintiff is exempt from taxation as a cemetery company under the provisions of Sec. 103(5) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev. Code, § 101(5). There is a further question raised by the pleadings whether, if plaintiff is determined not to be exempt from taxation, it is still entitled to a refund for certain overpayments alleged to have been made. This question is not properly a part of the hearing on the motions for summary judgment; hence a conclusion that plaintiff is not exempt from taxation does not result in sustaining defendant's motion for summary judgment, but the case proceeds on the question of the alleged overpayments. On the other hand, if the issue of exemption is determined in favor of the plaintiff, it is entitled to summary judgment.

The case is submitted upon a voluminous stipulation of facts which may be briefly summarized as follows: On November 9, 1869, defendant was incorporated as a Pennsylvania corporation by the Court

of Common Pleas of Montgomery County, Pennsylvania. Prior to its incorporation, on October 20, 1869, one John Jay Smith, representing the prospective incorporators, acquired in his own name approximately 88 acres of land for which he paid $53,032.50. On November 16, 1869, Smith and his wife executed and acknowledged an absolute deed of conveyance of this land to the West Laurel Hill Cemetery Company. Appended to this deed is a writing signed by John Jay Smith and Rachel P. Smith, his wife, acknowledging receipt of the sum of $53,032.50 as full consideration for the conveyance. On November 23, 1869, at the first meeting of corporators and stockholders, the deed was delivered to the company and on the same day was recorded in the office for recording deeds in Montgomery County. The books of the company do not show that the consideration of $53,032.50 was paid to Smith in cash, but the first entry on the company's day book credits him with that sum in the following words: "Land Account dr. to John Jay Smith for 88-3875/1000 acres purchased of him at $600.00 per acre...... $53,032.50." The books show that capital stock in the total sum of $150,000 was subscribed for, and $112,500 paid in on the stock subscriptions. It is apparent from a study of the book entries and the minutes of the company (although they are by no means clear) that the sum of $53,032.50 due to Smith as a consideration for the conveyance of the land was applied as a payment on stock subscribed for by him in the total amount of $75,000. Certificates were issued for the entire $150,000 of stock subscribed for. During the subsequent history of the company it purchased additional land from time to time amounting in the aggregate, up to the year 1926, to 150.9 acres.

On November 21, 1881, at a special meeting of the board of managers of the company, the following proceedings took place as shown by the minutes:

"Mr. B. M. Boyer submitted the following report as a Declaration of the Trusts under which the Cemetery Company holds its lands:

"Whereas, the purchase money of the lands, tenements and premises conveyed to The West Laurel Hill Cemetery Co., and the monies required for the necessary improvements of the same to adapt the same to the purposes of a Cemetery or place of interment for the dead, have been advanced and contributed in certain proportions by certain persons who associated themselves together for that purpose, and who in order conveniently to effect the same, caused the conveyance of said premises to be made to the said company, which argeed to hold the same In Trust for the uses and intents for which said monies were advanced, that is to say, for the uses and trusts hereby declared, viz.—

"First—In Trust to have and hold, use, appropriate and apply the said lands and tenements, premises and appurtenances for the purposes of a Cemetery or place of interment or burial, under and subject to the provisions of the Charter and By-Laws, Rules and Regulations of "The West Laurel Hill Cemetery Company" aforesaid, which now are or hereafter shall at any time be established.

"Secondly—In further trust to make and execute in consideration of prices, by said Cemetery Company to be fixed and regulated, sufficient deeds of conveyance to *purchases,* their heirs, executors or administrators, of rights of interment, and the enclusive use, possession and enjoyment of, in, and to any lots, parts or portions of said premises, for such purposes, subject to the By-Laws and Regulations of "The West Laurel Hill Cemetery Co." aforesaid from time to time adopted, and to receive, set apart and invest a certain proportion, to wit, ten per centum of all purchase monies received as and for a *permanent fund,* the principal of which shall not be diminished, the annual interest and income of which shall be applied for the preservation forever of the Cemetery premises aforesaid in good order and repair.

"Thirdly—In further trust to apply, and appropriate out of the remainder of said purchase monies that may from time to time be received from said sales, and from any other uses of said Cemetery premises, First,—to the current repair and proper care and improvement of said premises, and if deemed expedient, to set apart a portion thereof, not exceeding ten percent for the formation of a contingent fund for the purchase of additional land or other useful or necessary purposes incident to said Cemetery, and Secondly,—to apply appropriate and divide the annual net income and monies from time to time received from said sales, not required for the aforesaid purposes, to and among the contributors aforesaid, their heirs, Exe-

cutors, Administrators and Assigns, in proportion to their respective interests and shares in the same and for which they shall hold certificates to be issued by the said Company, the whole being divided into 3,000 equal parts or shares, and which shall be transferable only upon the books of said Company, which said net income out of the proceeds of said sales to be paid by the West Laurel Hill Cemetery Company aforesaid is the consideration for the conveyance of the said premises to the said Company for the aforesaid purposes.

"Fourthly—The persons named as Corporators in the Charter of said Cemetery Company shall be deemed stockholders in the same entitled to one vote each, and eligible as Managers of said Company; and in case of the death of any of said Corporators, the survivors of them shall elect as such stockholders in his stead, some one from among the lot-holders in said Cemetery, who at the same time is not a holder of one of said Certificates, and upon whose death his successor shall be elected in like manner.

"The holders of the aforesaid Certificates shall have all the rights and privileges of Stockholders in the said Company with a vote for each share represented by the aforesaid Certificates respectively, and eligible as Managers of said Company.

"The following Resolution is submitted for adoption. Resolved—That the contributions subscribed for the aforesaid purposes shall hereafter be considered and treated as fully paid up, and that upon the surrender of the present certificates for cancellation, new certificates shall be issued in the following form—

"Whole No. of Shares 3,000

"The West Laurel Hill Cemetery Company

"This certifies that        is entitled to parts or shares in The West Laurel Hill Cemetery Company, under the trusts declared by The West Laurel Hill Cemetery Company, Transferable only on the books of said Company, in person or by attorney on surrender of this Certificate.

"In testimony whereof, The West Laurel Hill Cemetery Company have caused this certificate to be signed by their President and countersigned by their Treasurer, this        Day of        A.D.  18

"Treasurer        President"

The annual meeting of the Company was held on the same day. Its minutes include the following statement: "Mr. Boyer presented the Declaration of Trust, which had been submitted to the Managers meeting this morning, and approved by the Board—together with the Resolution declaring the contribution fund fully paid; a motion to approve the same was made, when the Declaration of Trust and Resolution was unanimously adopted."

Also further on in same minutes appears the following: "On motion of Mr. Boyer, it was Resolved — That the contributions subscribed for the aforesaid purposes shall hereafter be considered and treated as fully paid up, and that upon the surrender of the present certificates for cancellation, new Certificates shall be issued."

I set out the foregoing excerpts from the minutes of the company for the reason that the plaintiff's claim to exemption from taxation is chiefly, if not entirely, grounded upon its interpretation thereof, which it contends should be adopted by the Court.

Each year, from 1875 on, plaintiff distributed to its stockholders or shareholders sums of money in proportion to their respective holdings, the total amount so distributed up to and including the year 1931 being the sum of $2,343,000. Since 1914 and up to and including the year 1930, plaintiff has filed income tax returns, as well as capital stock tax returns for the years during which the capital stock tax law was in effect; but it also filed for each of these years a petition claiming that it was exempt from tax as a corporation, which petition for each year being considered by the Commissioner, the plaintiff's claim to exemption was each year rejected, and plaintiff paid the taxes.

The chief source of plaintiff's income has been from the sale of burial rights, but it has also received rentals, proceeds from greenhouse operations, income from the sale of vaults, income from the principal of the permanent and contingent funds set aside pursuant to the so-called "declaration of trust" of 1881, and amounts charged for special care of lots. Its expenditures have been chiefly for salaries, wages, advertising, taxes, current repairs, interest, rent, materials and equipment, and it has set aside amounts in a permanent fund and a contingent fund as provided in the declaration of trust. Its books now show a substantial surplus.

Ever since its organization, plaintiff's officers and managers have been compensated for their services. Its operations have always been under the management and control of the board of managers through the officers. The shareholders are entitled to vote in proportion to their holdings and to hold office in the corporation, whereas the owners of burial rights have no voice in the company's affairs, nor have they ever received any distribution or dividends from moneys received by the plaintiff for burial rights or otherwise. Sometimes the distributions to shareholders are denominated on the books as "dividends" and sometimes as "distributions". On August 24, 1934, for the first time, by-laws were adopted. Upon the sale of burial rights to a purchaser, the company's practice has always been to deliver to the purchaser a deed therefor upon receipt of the full payment specified, and approximately ten per cent of the amount received has been set apart to form a permanent fund for perpetual care of the cemetery premises. It does not appear from the stipulation how much money has been set apart in the contingent fund, nor what use has been made of this fund. Neither does it appear, other than by an interpretation of the declaration of trust of 1881, who would be entitled to participate in the surplus in the event of the dissolution of the company.

From the foregoing facts, is the plaintiff entitled to exemption from taxation?

The pertinent statute reads as follows:

"The following organizations shall be exempt from taxation under this title [chapter]—

\*    \*    \*    \*    \*    \*

"(5) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual." Revenue Act of 1928, part of Sec. 103.

▉ In the case of May Kimball Smith v. Commissioner of Internal Revenue, 3 Cir., 1933, 69 F.2d 911, one of the shareholders of the plaintiff in the case at bar sought to have the distribution made to her in the year 1929 declared non-taxable as income from dividends, on the ground that it was a deferred payment for the sale of land to the plaintiff. The plaintiff here was not a party to the Smith case and many of the facts agreed upon in the stipulation here did not appear in the recital of facts contained in the Court's opinion in that case. However, a consideration of the additional facts does not substantially change the general picture presented of the company's operations, and therefore I regard the decision in the Smith case as controlling, rendered as it was by the Circuit Court of Appeals of this Circuit. It is argued that the holding in the Smith case that plaintiff here is taxable as a corporation is a mere dictum which should be given no weight in the Court's consideration of the instant case. Even if I should agree with this argument, I still regard the decision as sound. The test in this Court is whether the shareholders or trustees, or both combined, carry on business for profit. Little Four Oil Company v. Lewellyn, 3 Cir., 1929, 35 F.2d 149, and see Willis et al. v. Commissioner of Internal Revenue, 9 Cir., 1932, 58 F.2d 121.

Plaintiff seeks to bring this case within the rule announced in Commissioner of Internal Revenue v. Kensico Cemetery, 2 Cir., 1938, 96 F.2d 594, 595. In that case, land was acquired by a cemetery company under an agreement authorized by a specific statute, which provided that a cemetery might purchase land for burial purposes under an agreement to pay as the purchase price instead of a fixed sum "any specified share or portion not exceeding one-half the proceeds of all sales of lots or plots made from such lands." Laws N.Y. 1853, c. 122, § 1. The Kensico Cemetery agreed to pay one-half the proceeds of all lots sales when and as the lots were sold as the purchase price for the land. These payments were not contingent in any manner upon the operations of the company. It was held that holders of land distribution shares in the Kensico Cemetery were creditors of the company; that payments distributed to them on their shares were part payments for land sold to the cemetery; and it appearing in that case that no part of the net earnings inured to the benefit of any private shareholder or individual, it was held that the cemetery was exempt from taxation.

▉ In the instant case, the plaintiff paid the entire consideration for the purchase of the original boundary of land

when the deed was delivered to it in 1869, and it has since paid for additional land as acquired. The distributions to the shareholders are not based upon a fixed percentage of the sale price of lots, to be paid regardless of whether the cemetery may be operating at a profit or a loss; but on the other hand, these distributions are to be made out of surplus funds remaining after setting apart the portion of moneys received which is required for the maintenance of the permanent fund and a discretionary sum to the contingent fund, and the payment of expenses.

Being of opinion that the plaintiff is not exempt from taxation as a cemetery company under the provisions of Sec. 103(5) of the Revenue Act of 1928, I therefore deny the plaintiff's motion for summary judgment. As stated, the defendant's motion will likewise be denied and the cases will proceed for a determination of what, if any, over-payments have been made. An order may be entered in accordance with this opinion.